Thank you, Your Honor. May it please the Court. My name is Stephan Goldstein. I'm appearing today on behalf of Ms. Barbara Sims, the appellant in this matter. Ms. Barbara Sims is the personal representative of Mr. Sims' estate. Mr. Sims passed away in October of 2014, and Mrs. Sims was substituted as the appellant in this matter. Seated at our appellant's table is Mr. Barry Marcus. If possible, I would like to reserve three minutes for rebuttal. Ms. Simms All right. I'll try to help you, but when the clock says three, that's it.  Mr. Marcus Thank you, Your Honor. The principal issue on this appeal is whether the District Court had the authority to compel the Department of Interior to issue a patent to Mr. Sims' mill sites. Before I dive into the legal analysis of that issue, I'd like to take note of a couple of facts, as well as the postural position of this case. The Democrat Mine is an active mine consisting of approximately 7,000 feet of underground tunnels, stopes, and raises. The Democrat Mine produced approximately 10,000 tons of ore from the top 500 feet of the ore deposit, and 3,000 tons from the 800 and 900 foot level. Mr. Simms And the Sims' estate owns the claim, correct? Mr. Marcus The Sims' estate is part owner of the claim. If the Sims' estate owns the claim, the actual mine is operated by a different entity, of which Sims is a part owner. Mr. Simms And whatever happens with the patent, the ownership of that claim will continue? Mr. Marcus Is your question, if patent does not issue, will Sims maintain ownership of the claim? Mr. Simms Yes. Mr. Marcus He will maintain ownership of the claim until such time as the Department of Determines that the claims are invalid through a contest action. Mr. Simms Is there one pending? Mr. Marcus There is a pending contest action. Ms. Laird But no patent has yet issued, correct? Mr. Marcus No patent, well, patent to the Democrat Mine has issued. Issued in this case are the mill sites. Ms. Laird Correct. Mr. Marcus Patents to the mill sites have not issued. Ms. Laird That's not issued. Mr. Marcus Yes, that's correct. Ms. Laird And there's been no validity determination?  Ms. Laird Correct. Ms. Laird The Democrat Mine is primarily comprised of gold, silver, and lead. Approximately one million dollars was spent in development at the Democrat Mine from 2010 to 2012. Extensive drilling, sampling, and mapping of the Democrat Mine identified about 50,000 tons of proven and probable ore deposits and another 110,000 tons of inferred ore deposits. The calculated net profit of these deposits exceeds $300 per ton, and that calculation was made when metal prices were considerably lower than they are today. Mr. Simms filed his application for the mill sites in 1992, almost a quarter of a century ago. The government has not produced a single iota of evidence since Mr. Simms filed his patent application that the mill site claims are invalid in all 24 years. Mr. Simms filed the initial complaint in this action in order to compel the agency to complete the processing and order the issuance of the patent to the mill sites. Mr. Simms The Department of the Interior were to rule in your client's favor, the case would be moot, correct? Mr. Laird If the Department of Interior were to determine that the mill sites were valid, yes. Mr. Simms This case would be moot? Mr. Laird This case would be moot, yes. Mr. Simms And conversely, if the Department of the Interior decides to not allow your claim, you could appeal from that? Mr. Laird We could appeal from that, Your Honor. Mr. Simms Notwithstanding what this panel does? Mr. Laird Notwithstanding what this panel does, but in this case we already have 24 years of a delay, which the district court determined was unreasonable. Mr. Simms I think we understand your argument about delay, but I just wanted to make clear that whatever happens with regard to the issuance or non-issuance of a patent for the mill site, your client has remedies. Mr. Laird He has remedies, but whether or not those remedies are adequate considering due process concerns, that's another issue. Mr. Simms That's really the heart of your claim. There is this contest action. Their Interior Department is apparently taking an opposing position. You don't have a resolution, and basically you want us to order by a mindamus or through the district court to get on with the show. Is that the bottom line? Mr. Laird That is correct. The APA actually requires that where there is an unreasonable delay, the court compel the agency action unreasonably delayed. Mr. Simms But I didn't think that's what you were asking for in your response to Judge McKean. You said you want to get the show on the road, but you actually want an order awarding the patent, not just to get the show on the road. Mr. Laird Exactly. Yes. Sorry if I wasn't clear. Ms. Laird But absent a validity determination, you can't have a patent. Mr. Laird The validity determination is not actually part of the statutory requirements for the issuance of patent. Under 30 U.S.C. 29, it sets forth the procedural requirements for locating a patent claim, which we've complied with, and 30 U.S.C. section 42 sets forth three additional requirements that the mill sites are less than five acres, that they are non-mineral in character, and that they are used for mining or mining-related purposes. All of the statutory requirements in this case have been satisfied by Mr. Simms. The government argues that absent a validity determination, that the patents cannot issue. That requirement is not in the statute. It's not in the plain text of the statute. And, in fact, once equitable title passes to Mr. Simms, he has the right to patent. Ms. Laird Well, what do you make, then, of independence mining, where we basically say that issuance of patents before or prior to validity determination isn't a ministerial act? Mr. Laird Well, I think that that goes against what the Supreme Court has said in determining what the requirements are. Ms. Laird What is it bound by? Mr. Laird The Supreme Court is binding. Ms. Laird But they didn't address that issue. Mr. Laird Of whether a validity determination was required? Ms. Laird What case do you think, from the Supreme Court, is contrary to independence mining? Mr. Laird I'm blanking on the case name.  Ms. Laird I'll tell you what you can do. After you sit down, if you can remember, you can use it in your rebuttal, or if not, the clerk has a little piece of paper, and you can write it on there. Ms. Laird Okay.  Mr. Laird Thank you. Yes. Returning to my argument, the district court based its decision that it could not require the agency to issue patents on the determination that it lacked the general authority to do so, and the fact that it determined that Sims had no cognizable property interest. Okay. First, Sims, in fact, has two distinct cognizable property interests. First, Mr. Sims has the right to exclusive possession, which vests upon his valid location of the mill sites, and absent a determination of invalidity, Sims retains that right. The second cognizable property interest is that of equitable title. Equitable title to Mr. Sims' mill sites passed as soon as he complied with all the statutory requirements that were set forth before the issuance of patent. This determination was confirmed by the BLM when it accepted the purchase price and issued first half final certificate. The BLM's own manual, section 3860J, states clearly the date of issuance of the first half final certificate must be the date of acceptance of the purchase price. This is because the date of acceptance of the purchase price, when called for by the authorized officer, is the legal date of vesting of equitable title, a protected property right in the applicant, and the final certificate is actually effective on that date. Is it your argument that the government here, the guys of the Department of the Interior, should be equitably stopped from denying a patent to your client? That is part of our argument, Your Honor, yes. You understand that to convince the court to apply equitable estoppel, you have to establish affirmative government misconduct? Yes, Your Honor. What's your proof of that? The unreasonable delay in this case, I believe. Anything other than delay? The government has declined to process Sims' application, so no, nothing other than delay. Also, if you look at the timing, the district court already made a determination that it wasn't in bad faith, correct? Yes, Your Honor. So, we would have to basically say that was an abuse of discretion in terms of that determination, correct? Well, yes, Your Honor. Where the district court erred as a matter of law, that is an abuse of discretion, yes. According to the Accardi Doctrine, espoused by the Supreme Court, when an agency fails to follow its own procedures or regulations, that agency's actions are invalid. This doctrine was expanded by the Supreme Court in Morton v. Ruiz, where it stated the rights of the individuals are affected. It is incumbent upon the agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than would otherwise be required. Is there a timeline in the government procedures? Is there a thing that says if we don't act within two years, three years, four years? Yes, Your Honor. The BLM manual sets forth exactly the timeframe in which they're supposed to either issue patent or initiate a contest action, and that is within eight months and ten days. That's in Section 3860 as well. But the normal remedy for an Accardi-type violation is a remand to the agency for a do-over, correct? In this case, where the APA expressly gives the district court authority to decide this case based on the facts and application of the law, a remand isn't necessary. In fact, a remand would do nothing but exacerbate the delay in this case. Did you want to save your remaining time?  Thank you, Your Honor. Good morning, Your Honor. My name is Rachel Heron on behalf of the Federal Appellees. May it please the Court. Your Honor, I want to clarify something that came up in Appellant's argument, and that's precisely what's being asked for here. And as the Court ascertained, what's being asked for is not merely a remand for the agency to make a decision that the district court has found was unreasonably delayed and which the government has not challenged on appeal. The question is whether there should be an additional extraordinary step of dictating to the agency in advance what the substance of that decision should be. And in this case, mandamus is not available to compel that extraordinary remedy because there is no nondiscretionary duty existing as of yet for Interior to issue a patent. Are you saying that we couldn't tell the government to get on with the show, to use Judge McKinnon's expression? Well, Your Honor, that's exactly what the district court did. The district court ordered the government within 30 days of the district court's decision to either decide that the patent could issue or, if it found that patent could not issue, to institute an administrative contest. The government complied. It filed its administrative contest within 30 days, and it has been diligently prosecuting that administrative contest. So what, as a practical matter, what use is equitable title if it's only conditionally vested? What does it get you? Well, Your Honor, one of the things to keep in mind is that having legal title, so having the actual patent to this land in question, is not necessary to have the use of this land for the purposes that are in the mining law. And, in fact, throughout the period that the Sims' application was pending, there was no interference by Interior with their ability to use this property. The reason that there can't be a... There simply is not an opportunity to get title to the land that could exist even in the face of a determination by the agency that the claim doesn't meet the mining law's requirements, because, as the Supreme Court recognized in Cameron, there simply is no entitlement to this land unless those statutory requirements are complied with. Does the government contest the right or ability of the Sims Estate to operate the claim? The government does... Is there a yes or no in there? Your Honor, the government does not contest that they have the right to use this claim consistent with Forest Service regulations, as this land in question belongs to the Forest Service. Is the government contesting that it's being operated properly? The government... The question of properly, to the extent properly, means whether it is being used... That seems to me to be a pretty simple question to answer. Is the United States government or any of its agents currently taking the position that the Sims Estate is not properly operating the mill site? Yes, Your Honor, the administrative contest says that. The administrative contest is saying that this claim, based on what Interior has found so far, is not being used for the purposes of the general mining law. So you not only want to deny the patent, you want to deny the right to the claim? That would only be possible after there is a decision in the administrative contest. That's the government's intention in its present administrative proceedings, correct? If those administrative proceedings are resolved in BLM's favor, then yes. It wants the Sims Estate off the site. If it turns out that the claim is, in fact, not valid, then yes. But there was a prior settlement in which government also had claimed that there was noncompliance in terms of how the lands were being used, right? And then there was a settlement and dismissal of that contest. So, Your Honor, there was not a settlement. There was a prior administrative contest. Right. Though that administrative proceeding was, first it was put on hold at the request of Mr. Sims so that he could negotiate with the Forest Service the possibility of getting this land in question through other means, a land exchange. That was a land swap, right? Yes, that's correct. And when those negotiations went on for a while, the administrative law judge suggested that the first contest be dismissed without prejudice, explicitly subject to refiling. But it was based on a noncompliance theory, right? It was based on the theory that, yes, that the land was not being used for the purposes that are set forth in the mining law. And so the current contest that is ongoing now, validity determination is within the scope of that contest, correct? Your Honor, the same question is at stake there. There is also another question in the second contest proceeding regarding whether the land in question is mineral or non-mineral in character. Again, under the mining law, this land would need to be non-mineral land to be eligible for mill site patenting. And is there any estimate on the completion of the current proceeding? Yes, there is, Your Honor. The proceeding is scheduled for a multi-week evidentiary adversarial proceeding this coming January and February of 2017. That will be the end of that proceeding. As to when the administrative law judge will make a decision after that proceeding, that's not a question that I can answer, unfortunately. So it hasn't been stayed pending this appeal? No, Your Honor. The appellant did request in several motions that that proceeding be stayed pending appeal, but the administrative law judge did not do so. I see. And in the meantime, he's passed away. Yes, that's correct, Your Honor. Didn't Mr. Sims offer a land swap for the site? Mr. Sims was in negotiations with the Forest Service about a land swap for this site. And offered, in fact, a piece of land? Had it appraised? To be honest, Your Honor, I'm not sure exactly how far those negotiations got, what documentation was exchanged between Mr. Sims and the Forest Service. You're only the lawyer for the Department of the Interior. I'm just a judge who's read the record, and the record suggests that Mr. Sims, prior to his demise, offered a land swap and had the land being offered to swap appraised, and the Forest Service simply failed to respond. Am I incorrect about that? Your Honor, I apologize. I'm not trying to contradict what's in the record. That is my understanding based on the record. All I meant to say beyond that was that the Forest Service is not a party to this case, so I'm not sure what happened internally on their end in the course of those negotiations. Okay. So BLM and the Forest Service don't talk? They certainly can talk, Your Honor. They are within two different departments, and BLM did not have any formal role in these negotiations with the Forest Service. And the fact that BLM was not involved in those negotiations is part of the reason the district court found here that even if there were the ability to grant some kind of an extraordinary equitable remedy in this case, it wouldn't be warranted because the delay that has resulted since the first administrative contest proceeding was dismissed without prejudice was both parties contributed to that delay given that the Sims never got back in touch with BLM when their negotiations with the Forest Service. What is your client's position with regard to court-ordered mediation? Your Honor, we don't have a particular position. We would certainly be willing to hear anything, and if this court believes that it would be a good idea, we would certainly be willing to explore that. What would you explore? I mean, one of the difficulties is that there is a contest proceeding in process, right? Yes, Your Honor. But that contest proceeding is a Department of Interior BLM proceeding, correct? That is correct, Your Honor. And I do think that that is the difficulty here, is that until that administrative contest proceeding goes forward, in our view there is simply nothing that can be given to the appellant at this stage. They don't have an entitlement to this patent. You could give them one if you wanted, right? No, Your Honor. I don't believe we could. Are there any regulatory hurdles to making this determination without the formal validity determination? Yes, there is, Your Honor, and that's the mining law itself, as interpreted by Cameron. Cameron found that in order for there to be a valid right under the mining law, Interior needs to use its power as a special tribunal in charge with making sure that public land is only disposed of according to the terms that Congress has set. And so until Interior has made that determination in this case, it cannot be sure that the land that it's giving away is land that is appropriate to give away under the terms Congress has set. And I want to touch on that, the particular issue of Congress having given this decision to Interior to make in the first place, if I may for a moment, because there was a fair amount of material in the briefs and in Appellant's argument regarding the facts on the ground about validity, and I just want to clarify that the fact that the government has not briefed those issues in detail in this case is in no way a concession that these mill site claims are valid under the statute. In fact, the ongoing administrative contest proceeding shows that the government at this point thinks exactly the opposite. The reason that the government has not gotten into those issues in detail is that Interior is the one that is supposed to make this decision in the first instance under the mining law, as interpreted by Cameron, and there's good reason that Congress has given this determination to Interior. We are talking about disposition of public land, specifically land that's in a national forest. When this land, if this land is transferred in fee simple to private hands, the government will no longer have any ability to protect the public's use or interest in that land, that public right will be extinguished, and the land would be able at that point to be used for any purpose, even a purpose that seems quite incompatible with this land's existence in a national forest. That and the complexity of the issues that are involved, as I mentioned, this evidentiary proceeding on the nature of these mill sites is going to take multiple weeks before an administrative law judge and has required months of discovery in addition to that. All of these are reasons why it makes sense for this decision to be one that goes to Interior in the first instance. Because Interior has not made that decision in the first instance here, there is simply no entitlement to receive a patent at this time. Could we amend the district court's order by including a drop-dead deadline for the completion? Is that within the capacity of a court under the circumstances to do? Your Honor, I think it would be within the capacity of the court to say that the proceeding needed to be done by a particular time as long as the outcome of that proceeding is not dictated. We couldn't say get it done by the 4th of July or the patent issues. That's correct. That would not be possible. Well, it's possible. Legality, I guess, is what you mean. Pardon me, Your Honor. It would not be proper in the government's view. The district court could have done so. However, it was not an abuse of discretion on this record for it not to have done so. The record showed that the reason that this administrative contest that was originally filed in 2000 was not refiled was because there was this failure of communication regarding the status of the Forest Service land negotiations. It takes two parties for there to be a failure of communication. That is absolutely true. Interior could have gotten in touch, although I will say that under the mining law, it very much depends on a person who's seeking a patent to be self-directed about what's going on. But given that both sides were out of communication and the fact that Interior, BLM in particular, has moved very promptly since the district court ordered the relief, no further deadline was warranted here in our view. The one last thing I would like to touch on, Your Honor, unless you have other questions, is regarding equitable estoppel and the question of whether the requirements for equitable estoppel would be met here or some other equitable relief. I want to say in the first instance that in the government's view, any equitable remedy that would result in giving this land away without making sure Congress's requirements are satisfied would not be available at all. But even to the extent that that remedy was available, as you mentioned, Your Honors, the standard would be abuse of discretion. And here the district court expressly found that there was no bad faith, no affirmative misconduct on part of the government. And for that reason and because of the ongoing administrative process and the importance of these questions, there was no abuse of discretion in not ordering further relief. And we would ask that this court affirm the district court. Thank you. You have about three minutes. Thank you, Your Honor. I'd like to start by providing that citation. I was actually referencing Cameron, which is in regards to the Supreme Court decision, which is 252 U.S. 450. And that court stated that satisfaction of a statutory requirement, thus equitable title, meaning that as soon as the applicant has satisfied the statutory criteria, he possesses equitable title and therefore is entitled to the issuance of the patent. Is this citation in your brief? Yes, Your Honor. That citation is in the brief. The courts in Cook and Shumway came to similar determinations. And the Shumway is a Ninth Circuit case, and Cook is a federal claims court case. I'd also like to address the fact that Sims did offer an exchange to the Forest Service. He did have the land appraised. And once the initial contest action was dismissed without prejudice, the Department of Interior did have an attorney who was responsible for monitoring the negotiations between Sims and the Forest Service. Well, there's a statement in the brief that the contest proceeding was in 2000, then there was a stayed for exploration of alternative avenues, and in 2007 that your client cut off discussions with the Forest Service and at that time did not advise the BLM. Is that not true? My client did not cut off discussions with the Forest Service. Or they didn't continue. The Forest Service never responded to my client's offer. Right, but the Forest Service is in the Department of Agriculture. Yes. The Department of Interior. Yes. And at that point it was the Department of Interior's responsibility to re-initiate the contest process. Did you at what point? Is there something from your client to Interior that says this alternative? In general, it was the Department of Interior's responsibility to re-initiate the contest before the running of the applicable statute of limitations. I don't understand what the basis for that is. In other words, the contest, they were stayed. The proceedings were stayed. Well, the dismissal without prejudice was actually a final action. Right. So the proceeding was stayed for six years and then dismissed, which is a final action. Right. And so what did you do? It was stayed in 2002. What did you do in 2007 when it was clear the Forest Service wasn't coming through? Well, my client had no responsibility. I'm not asking you what your responsibility was. What did you do? Anything? You just let it sit there and say, well, now the Interior Department should be doing something? And that doesn't make any sense. Did your client do anything during that period? We assumed because it was the Department of Interior's responsibility that they would continue. No, they didn't do anything. Yes, we did. Okay. Simple answer. Yes, Your Honor. You can't just create the facts on the spot here. I'm going to try to ask you, because we've got all these statements in the briefs, and maybe you were wishing they would do something and they didn't. That's true, Your Honor. How does your client initiate anything? That's true, Your Honor. Okay. I just want to make the distinction that it was not my client's responsibility to initiate anything. We have your argument in hand. Thank you very much. Thank you. Thank you. Both of you this morning for your arguments. Sims v. Ellis is submitted.
judges: Hawkins, McKeown, Davis